# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### July 18, 2012 Session

## MARK T. WICKHAM v. SOVEREIGN HOMES, LLC

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1161-2      Arnold B. Goldin, Chancellor**

---

**No. W2011-02508-COA-R3-CV - Filed September 25, 2012**

---

Plaintiff homeowner brought an action against Defendant builder alleging, inter alia, breach of warranty and violation of the Tennessee Consumer Protection Act. The trial court awarded summary judgment to Defendant builder. We affirm summary judgment on Plaintiff's breach of warranty claim; reverse summary judgment on Plaintiff's Consumer Protection Act claim; and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in part, Reversed in part and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Erich M. Shultz, Memphis, Tennessee, for the appellant, Mark T. Wickham.

James B. Summers and Jessica A. Benton, Memphis, Tennessee, for the appellee, Sovereign Homes, LLC.

## OPINION

This dispute arises from alleged defects in a new home located on lot 66 of the Taluswood Subdivision in Cordova, Tennessee. The current appeal is from the trial court's order awarding summary judgment to Defendant builder, Sovereign Homes, LLC ("Sovereign Homes"), dismissing Plaintiff's claims against Sovereign Homes with prejudice and making the order final pursuant to Tennessee Rule of Civil Procedure 54.02

In June 2008, Plaintiff/Appellant Mark T. Wickham (Mr. Wickham) filed an action for rescission of contract or, alternatively, monetary damages against Sovereign Homes; Prudential Collins-Maury, Inc., Realtors("PCM"); and Jeff Goodman (Mr. Goodman;

collectively, "Defendants") in the Chancery Court for Shelby County. In his complaint, Mr. Wickham alleged that, on June 25, 2007, he and Sovereign Homes executed a contract for the purchase of a new home on Redmond Drive in Cordova, and that shortly after moving into the home in August 2007, he observed defects to the home including cracks in the brick veneer and interior walls, walls separating from the floor, the sinking of counters, and doors and cabinets that would not close properly, and exterior wood molding pulling away from the brick. Mr. Wickham alleged that he notified Defendants of the problems and that, in February and March 2008, inspections to the home by a structural engineer retained by Defendants revealed cracks in the exterior brick and settling and movement of the foundation. Mr. Wickham alleged that the structural engineer who inspected the home told Mr. Goodman, an employee of PCM and the designated real estate agent for Sovereign Homes, that work had previously been done to correct this problem. Mr. Wickham alleged that he had not been informed of any previous repair work, and that Mr. Goodman "stated something to the effect of, 'Did I not mention that to you?'" Mr. Wickham alleged that he later learned that the same structural engineer had inspected the home in March 2007 after cracks were observed in the brick veneer, and that the engineer determined the cracks were caused by foundation settlement due to water drainage from an adjacent property. He alleged that repairs to the foundation and brick were performed, that Defendants knew that the home "had structural defects," and that Defendants failed to disclose these known defects.

Mr. Wickham asserted that the new home contract entered into with Sovereign Homes stated, in part, that "Seller specifically represents that there are no known defects pertaining to the property condition known to seller which have not been disclosed to the purchaser," and that "Seller agrees that the grade of the property at closing will be such that water will drain away from the residence." Mr. Wickham alleged that the "new home limited warranty" furnished by Sovereign Homes stated that Sovereign Homes, the builder, was the sole warrantor of the home. Mr. Wickham asserted that "[t]he new home built by Sovereign was in a defective state, experiencing excessive settling, resulting in exterior cracks, and improper water drainage, shortly after it was constructed, but before it was sold." He asserted that had Defendants disclosed the defects to the home and subsequent work to repair the defects, he would not have purchased it. He asserted damages as a result of Defendants' acts and omissions.

Mr. Wickham asserted claims for misrepresentation; fraudulent concealment; breach of contract; breach of express warranty; breach of warranties of habitability, good workmanship, and materials; breach of professional duty; and violation of the Tennessee Consumer Protection Act ("TCPA"). He prayed for rescission of the contract between him and Sovereign Homes, and consequential and incidental damages. He alternatively prayed for damages in an amount to be determined at trial, which Mr. Wickham submitted were likely to be greater than the purchase price of the home, and treble damages under the TCPA.

Sovereign Homes answered in December 2008. Sovereign Homes denied any liability or wrong-doing, and asserted the comparative fault of the seller of the lot, Latting Road Partners, LLC ("LRP"), which warranted and represented that the lot was certified to have a 95% soil compaction. Sovereign Homes also asserted the comparative fault of its concrete subcontractor, Roetker and Lawson Construction, LLC ("Roetker"), and its engineering firm, Brough and Stephens, Inc. ("Brough"). In February 2009, Mr. Wickham amended his complaint to add LRP, Roetker, and Brough as Defendants. In July 2009, Sovereign Homes filed an amended answer with the permission of the trial court, and pled the comparative fault of Rusco Company, the developer of the subdivision; T.R. Mills Contractors, Inc. ("T.R. Mills"), the grading, filling, and soil compactor contractor for the subdivision; Prime Development Group, Inc. ("Prime Development"), which prepared the plans for the subdivision; and Derek Baskins (Mr. Baskins), the engineer who prepared the subdivision plans. Mr. Wickham filed a second amended complaint in December 2009, adding Rusco Company, T.R. Mills, Prime Development and Mr. Baskins as Defendants. Mr. Wickham also added William R. Hyneman (Mr. Hyneman) a partner in Rusco Company, as an additional Defendant.

Following discovery, Sovereign Homes moved for partial summary judgment in February 2011. In its motion Sovereign Homes asserted that the undisputed facts showed that 1) "the cracks and other issues with [the] house [were] caused by soil movement"; 2) that Mr. Wickham's remedies were limited to those provided in the Registered Builder New Home Limited Warranty, which expressly excluded damages resulting from soil movement; 3) that there was no proof of a defect in the house or a known defect in the property prior to the sale of the house; 4) that Mr. Wickham could not recover on his claims for breach of warranties of habitability, good workmanship and materials where all implied warranties were expressly disclaimed; and 5) that the actions of Sovereign Homes did not fall below standard of care because Sovereign Homes at all times followed the advice of structural engineers. In its statement of undisputed facts, Sovereign Homes asserted that, in March 2008, it was discovered that the soil compaction of Mr. Wickham's lot fell below the percentage warranted; that the cracks were caused by soil movement; that the new home limited warranty excluded damage resulting from soil movement; that it did not have prior notice of any issues of soil compaction or insufficient subsurface conditions; and that prior to the sale of the house, there was nothing to indicate and no reason to suspect that there were problems with the subsurface soil conditions.

In his reply to Sovereign Homes' motion for summary judgment, Mr. Wickham disputed Sovereign Homes' contention that it had no prior notice of any issues of insufficient soil compaction and that he had no reason to suspect problems with the soil conditions prior to sale. He further asserted that Sovereign Homes did not disclose that the foundation had undergone post-construction structural repairs prior to sale of the home; that a visual

inspection of the home would not have revealed the repairs to the foundation; and that he would not have purchased the property if the repairs had been disclosed.

Following a hearing in August 2011, the trial court dismissed Plaintiff's claims against Sovereign Homes for misrepresentation; fraudulent concealment; breach of contract; breach of express warranty; breach of warranties of habitability, good workmanship, and materials; breach of professional duty; and violation of the Tennessee Consumer Protection Act ("TCPA") with prejudice on October 3, 2011. The trial court made the judgment final pursuant to Tennessee Rules of Civil Procedure 54.02. Plaintiff Mark T. Wickham (Mr. Wickham) filed a timely notice of appeal to this Court.

### *Issues Presented*

Mr. Wickham presents the following issues for our review:

(1)     Was summary judgment properly granted where the builder of a new home did not disclose to the buyer that significant foundation repairs had been made prior to sale?

(2)     Can failure to disclose foundation repairs to a new home constitute an unfair or deceptive act or practice within the meaning of the Tennessee Consumer Protection Act, T.C.A. 47-18-101, et seq.?

(3)     Was failure to disclose the foundation repairs a breach of warranty?

The issues presented, as we perceive them, are:

(1)     Whether the trial court erred by awarding summary judgment to Sovereign Homes on Mr. Wickham's Tennessee Consumer Protection Act claim.

(2)     Whether the trial court erred by awarding summary judgment to Sovereign Homes on Mr. Wickham's claim for breach of express warranty.

### *Standard of Review*

We review a trial court's award of summary judgment *de novo* with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk S. Ry. Co.*, 271

S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. at 83 (quoting Tenn. R. Civ. P. 56.04; accord *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn.2000)). The burden of persuasion is on the moving party to demonstrate, by a properly supported motion, that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id*. (citing *see Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The nonmoving party's "burden to produce either supporting affidavits or discovery materials is not triggered" if the party moving for summary judgment fails to make this showing, and the motion for summary judgment must be denied. *Id*. (quoting *McCarley*, 960 S.W.2d at 588; accord *Staples*, 15 S.W.3d at 88). The moving party may carry its burden by "(1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." *Id*. (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *see also McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n. 5). Additionally, a mere "assertion that the nonmoving party has no evidence" will not suffice. *Id*. at 84 (citing *Byrd*, 847 S.W.2d at 215). "[E]vidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." *Id*. (citing *McCarley*, 960 S.W.2d at 588). Rather, "[t]he moving party must either produce evidence or refer to evidence previously submitted by the nonmoving party that negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008)(citing *Hannan*, 270 S.W.3d at 5). In order to negate an essential element, "the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." *Id*. at 84 (citing see *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). The motion for summary judgment must be denied if the moving party does not make the required showing. *Id*. (citing *Byrd*, 847 S.W.2d at 215).

After the moving party has made a properly supported motion, the nonmoving party must "produce evidence of specific facts establishing that genuine issues of material fact exist." *Id*. (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215). To satisfy its burden, the nonmoving party may: (1) point to evidence of over-looked or disregarded material factual disputes; (2) rehabilitate evidence discredited by the moving party; (3) produce additional evidence that establishes the existence of a genuine issue for trial; or (4) submit an affidavit asserting the need for additional discovery pursuant to Rule 56.02 of the Tennessee Rules of Civil Procedure. *Id*. (citing *McCarley*, 960 S.W.2d at 588; accord *Byrd*, 847 S.W.2d at 215 n. 6). The court must accept the nonmoving party's evidence as true, resolving any doubts regarding the existence of a genuine issue of material fact in that party's

favor. *Id*. (citing *McCarley*, 960 S.W.2d at 588). "'A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed.'" *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008)(quoting *Byrd*, 847 S.W.2d at 215). "A disputed fact presents a genuine issue if 'a reasonable jury could legitimately resolve that fact in favor of one side or the other.'" *Id*. With this standard in mind, we turn to the issues raised on appeal.

### *Discussion*

Upon review of the record, we find that the background facts giving rise to this lawsuit are largely undisputed. In March 2005, Rusco Company and Mr. Hyneman sold the land that was to become the Taluswood subdivision to LRP. The warranty deed conveying the land stated:

> Subject lots may be filled land or partially filled land and Grantor makes no
> representation as to said property being undisturbed land. The Grantor is not
> to be responsible or liable for any claim of any kind or character because said
> property is filled or partially filled land, however all lots shall have at least a
> 95% compaction.

In February or March 2005, LRP hired T.R. Mills as the general contractor to develop the Taluswood subdivision ("the subdivision") on the land. In February 2005, LRP and Sovereign Homes entered into a contract for the purchase of 80 lots in the subdivision. The contract provided that any filled lots shall have certified 95% compaction, and that all warranties shall survive the closing and execution of the deed. Excavation work began sometime after May 25, 2005. The site work in the subdivision included "remediation" of a pond which existed on the site. T.R. Mills completed work on the site in August 2005.

In 2006, LRP conveyed developed lots of the subdivision to Sovereign Homes. The warranty deed contained the following disclosure:

> Subject lots may be filled land or partially filled land and Grantor makes no
> representation as to said property being undisturbed land. The Grantor is not
> to be responsible or liable for any claim of any kind or character because said
> property is filled or partially filled land, however all lots shall have at least a
> 95% compaction.

Sovereign Homes began construction on the home and Roetker was contracted to construct a monolithic concrete slab for the home. Before the slab was poured, Brough was retained to inspect the excavation, footings and soil. Brough engineer Mark Stephens (Mr.

Stephens) determined the soil was soft in some areas and directed that piers be installed underneath the slab's footings. In March 2007, after the home was completed, Sovereign Homes noticed cracks in the exterior brick of the home on the left side and front left corner. Roetker was contacted to investigate the issue, and they requested Brough to return to the site. Brough determined that water was pooling against the left side of the home due to the higher elevation of the adjacent lot, causing settlement. Brough engineers recommended grading to the left side of the house to divert water, and the installation of additional piers along the left side of the house. In March 2007, Sovereign Homes performed additional grading and made repairs to the foundation beneath the garage, which included the installation of additional piers.

In June 2007, Mr. Wickham and Sovereign Homes executed a new home contract of purchase of the home. Mr. Wickham did not have the home inspected prior to purchase. Mr. Wickham asserts that he began to notice cracks and other problems in the house in August 2007. An additional inspection by Mr. Stephens in March 2008 revealed that the cracks and other problems resulted from the construction of the home on improperly compacted soil.

In 2008, the State of Tennessee revoked the charter of T.R. Mills and administratively dissolved the corporation. The president of T.R. Mills and his wife filed petitions for bankruptcy the same year. LRP filed a petition for bankruptcy in April 2010.

Prime Development and Mr. Baskins moved for summary judgment in April 2010. They asserted that they entered into a contract with Rusco to prepare the subdivision infrastructure plans and drawings; that the plans were approved by the Shelby County and Memphis City Engineers in June and July 2005, respectively; and that it retained the "as-built" certification for the work performed in the subdivision because it had not been paid for its work. Prime Development and Mr. Baskins asserted "due to nonpayment, [they] have not certified that the improvements were installed as per those plans" and "do not know to this day whether [the] plans and drawings were followed correctly or not." In August 2010, the trial court entered an order awarding summary judgment to Prime Development and Mr. Baskins.

In December 2010, Rusco and Mr. Hyneman filed a motion for summary judgment based on the expiration of the statute of limitations and statute of repose. Mr. Hyneman filed a petition for bankruptcy in March 2011, and in May 2011 requested the court to stay the proceedings against him. In September 2011, Rusco again moved for summary judgment based on the expiration of the statute of limitations and statute of repose. The trial court

entered an order awarding summary judgment to Rusco and Mr. Hyneman in October 2011.[1] Mr. Wickham and Roetker entered a settlement agreement and Roetker was dismissed by a consent order entered by the trial court in February 2011.

As noted above, in October 2011 the trial court awarded summary judgment to Sovereign Homes and made its judgment final pursuant to Rule 54.02 of the Tennessee Rules of Civil Procedure. We accordingly turn to whether a genuine issue of material facts exists so as to preclude summary judgment of Mr. Wickham's claims against Sovereign Homes under the TCPA and for breach of warranty.

### *The Tennessee Consumer Protection Act Claim*

The provisions of the TCPA mirror the prohibitions found in the Federal Trade Commission Act against unfair or deceptive practices in or affecting commerce. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). It is not a codification of common law, but "provide[s] additional, supplementary state law remedies to consumers victimized by unfair or deceptive business acts or practices that were committed in Tennessee in whole or in part." *Id*. (citing Tenn. Code Ann. § § 47-1-102(2), (4), -112). The TCPA is an explicitly remedial act, and therefore must be liberally construed to protect consumers. *Id*. (citing Tenn. Code Ann. § 47–18–115; *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 925 (Tenn. 1998); *Morris v. Mack's Used Cars*, 824 S.W.2d 538, 540 (Tenn. 1992)). It is broader in scope than an action for common-law fraud. *Id*. A consumer may recover under the TCPA without being required to meet the burden of proof required in a common law fraud action. *Id*. Additionally, the defenses available to a defendant in an action for common law fraud are not available to a defendant in an action under the TCPA. *Id*. Accordingly, misrepresentations may be actionable under the TCPA that would not be actionable in claim for common law fraud. *Id*. The TCPA is applicable to "any act or practice that is unfair or deceptive to consumers." *Id.* (citing Tenn. Code Ann. §§ 47–18–104(a), –104(b)(27))(footnote omitted)). Thus, the TCPA is "not limited to misrepresentations that are fraudulent or willful." *Id*. (citing *Smith v. Scott Lewis Chevrolet, Inc.*, 843 S.W.2d 9, 12–13 (Tenn. Ct. App. 1992)).

To recover damages in an action under the TCPA, the plaintiff must prove: "(1) that

---

[1]It does not appear from the record whether the trial court entered an order adjudicating Mr. Hyneman's May 2011 petition to stay the proceedings following his petition for bankruptcy. However, section 362 of the Bankruptcy Code provides an automatic stay of judicial proceedings against a debtor who has filed a petition under sections 301, 302, or 303 of the Bankruptcy Code. 11 U.S.C.A. § 362. It does not appear from the record whether the stay was lifted in the bankruptcy proceedings, or whether the trial court regained jurisdiction over the proceedings against Mr. Hyneman.

the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity or thing of value wherever situated. . . .'" *Id*. (citing Tenn. Code Ann. § 47-18-109(a)(1)). Although section 47-18-104 contains a non-exclusive list of deceptive or unfair acts, the TCPA does not define the terms "unfair" and "deceptive." *Id*. at 116. Therefore, "the standards to be used in determining whether a representation is 'unfair' or 'deceptive' under the TCPA are legal matters to be decided by the courts." *Morrison v. Allen*, 338 S.W.3d 417, 438 (Tenn. 2011)(citing *Tucker*, 180 S.W.3d at 116). However, "whether a specific representation in a particular case is 'unfair' or 'deceptive' is a question of fact." *Id*. (citing *id*.).

We have observed that "[t]he broad phrasing of the statute suggests that, at the very least, the terms 'unfair' and 'deceptive' should not be limited to a set of specific acts that can be readily catalogued in a judicial opinion or otherwise." *Tucker*, 180 S.W.3d at 116. We have construed a deceptive act as "one that causes or tends to cause a consumer to believe what is false or that misleads or tends to mislead a consumer as to a matter of fact." *Id*. (footnote omitted). Accordingly, under the TCPA, "the essence of deception is misleading consumers by a merchant's statements, silence, or actions." *Id*. (citing Jonathan Sheldon & Carolyn L. Carter, *Unfair and Deceptive Acts and Practices* § 4.2.3.1, at 118–19 (5th ed.2001)). Unfairness, moreover, is a broader concept that "applies to various abusive business practices that are not necessarily deceptive." *Id*. (citing *id*. at 156). An unfair act or practice is one that "'is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.'" *Davis v. McGuigan*, 325 S.W.3d 149, 162 (Tenn. 2010)(quoting *Tucker*, 180 S.W.3d at 116-17) (quoting 5 U.S.C.A. § 45(n))). An unfair act is one that causes an injury not reasonably avoidable by a consumer. *Tucker*, 180 S.W.3d at 117. Unfair acts include those that "unreasonably interfere with consumer decision-making," including "(1) withholding important information from consumers, (2) overt coercion, or (3) exercising undue influence over a highly susceptible class of consumers." *Id*. (citing *Unfair and Deceptive Acts and Practices* § 4.3.2.3, at 155)).

The issue presented by this appeal is whether Sovereign Homes affirmatively negated an essential element of Mr. Wickham's TCPA claim, or demonstrated that Mr. Wickham would be unable to prove an unfair or deceptive act on the part of Sovereign Homes at trial. Mr. Wickham asserts that Sovereign Homes' failure to inform him of prior problems with the foundation and subsequent repairs constitutes a deceptive or unfair act. He further asserts that, prior to entering the contract for sale of the home, he observed that a coating had been put on the floor of the garage. Mr. Wickham asserts that he inquired about the coating and that Mr. Goodman, Sovereign Home's real estate agent, informed him that the coating had been applied for "aesthetic" purposes. Mr. Wickham argues that he was not told that the

coating covered evidence of substantial repairs to the foundation, and that the nature of the coating was misrepresented.

Upon review of the record, we note that Mr. Goodman's deposition testimony supports this assertion. Mr. Goodman stated,

> Prior to [Mr. Wickham] entering into contract to purchase the home, he had noticed that in the garage, that the -- they had put a -- like a sealant on the garage floor.

When asked whether the sealant covered the garage floor completely, Mr. Goodman replied, "Yeah, completely." When asked whether it was a clear sealant, Mr. Goodman replied,

> No, it was -- it was the color of concrete and -- but it was, you know, something that -- that he noticed and he questioned why that finish was on -- on the garage floor.

Mr. Goodman stated that he was aware of a "hairline" crack in the floor, and that

> for aesthetic purposes, they had somebody come out and -- I would call it float -- it wouldn't be floating the floor, but they just put a -- I mean, I would call it a sealant. I don't know what it was, but it -- they just put it on the floor.

Mr. Goodman further stated that the coating would completely cover cracks and that he "would assume that Sovereign [had] hired a subcontractor to" apply the "sealant." Mr. Goodman further stated that, when he responded to Mr. Wickham's questions about the garage floor, he was not aware of any foundation problems or subsoil problems that may have contributed to the cracks in the floor.

In its brief, Sovereign Homes asserts that the actions it took to address problems with the foundation in March 2007 cured any problem of which it was then aware. It contends that the failure to advise Mr. Wickham of the earlier defective condition of the foundation was not deceptive because a defective condition that has been remedied ceases to be a defect. It additionally asserts that the installation of piers is not an uncommon construction process and does not constitute a "defect."

Mr. Wickham, on the other hand, contends that he would not have purchased the home had he been aware that it had undergone significant structural repairs to remedy post-construction problems with the foundation. He asserts that Sovereign Homes' failure to reveal the prior repairs, coupled with Mr. Goodman's assurances that a concrete-colored

sealant had been placed on the garage floors for aesthetic purposes rather than to conceal substantial earlier repairs to the foundation, was deceptive and caused him to purchase a home he otherwise would not have purchased.

It is undisputed that Mr. Wickham's home underwent substantial repairs to the foundation before Mr. Wickham and Sovereign Homes executed the contract for sale of the property. It is also undisputed that Sovereign Homes failed to disclose those repairs. Sovereign Homes relies on the trial court's "findings" in support of its position that its acts were not misleading and did not influence Mr. Wickham's decision to purchase the home. The trial court's factual findings with respect to these disputed facts are premature, however, at the summary judgment stage of the proceedings. Sovereign Homes also asserts that the installation of piers to correct problems in March 2007 did not cause the later problems, which resulted from improper soil compaction. It asserts that the use of piers is an acceptable building practice, that it followed the advice of structural engineers when addressing issues with the foundation in March 2007, and that the piers did not constitute a defective condition.

The means by which Sovereign Homes attempted to correct problems with the foundation in March 2007 is irrelevant to our inquiry here. The issue presented in this case, as we perceive it, is whether Sovereign Homes' failure to disclose earlier substantial repairs to the foundation, coupled with the alleged misleading characterization of the coating on the garage floor which concealed those repairs, constitute a deceptive or unfair act for the purposes of the TCPA. As noted above, whether a particular act or statement is deceptive or unfair under the TCPA is a question of fact for the finder of fact. Additionally, unless the undisputed facts would allow a reasonable person to reach only one conclusion, the question of causation and the allocation of comparative fault are issues to be resolved by the finder of fact. *Hale v. Ostrow*, 166 S.W.3d 713, 718 (Tenn. 2005).

In this case, viewing the facts in a light most favorable to Mr. Wickham, there is a genuine issue of material fact as to whether Sovereign Homes' failure to disclose prior problems with the foundation, combined with the representations of its sales agent to Mr. Wickham regarding the reason for the application of a concrete-colored "sealer" or resurfacing to the garage floor, were deceptive or unfair in light of the totality of the circumstances. This is a question of fact to be resolved by the finder of fact. The question of whether any such deceptive or unfair acts influenced Mr. Wickham's decisions as a consumer also is a question of fact to be resolved by the finder of fact. We accordingly reverse summary judgment in favor of Sovereign Homes on Mr. Wickham's TCPA claim.

### *Breach of Express Warranty*

We next turn to whether the trial court erred by awarding summary judgment to

Sovereign Homes on Mr. Wickham's claim for breach of warranty. The interpretation of a written document generally is a question of law that we review *de novo*, with no presumption of correctness. *Adkins v. Bluegrass Estates, Inc.*, 360 S.W.3d 404, 411 (Tenn. Ct. App. 2011) The interpretation may become an issue for the trier of fact, however, where the document is ambiguous and if parol evidence is necessary to determine its meaning. *Id*. Mr. Wickham's argument on this issue in the argument section of his brief consists of one ten-line paragraph. He asserts that, in its express warranty, Sovereign warranted "that there are no known defects pertaining to the property condition known to the Seller which have not been disclosed to the Purchaser." Mr. Wickham submits that "the language does not simply promise no current defects, but 'no defect pertaining to the property condition.'" He argues that the previously repaired foundation "pertains to the property," and that he would be required to disclose the foundation repairs in the Property Disclosure Form required by Tennessee Code Annotated § 66-5-210 if he were to sell the home, even absent the soil condition. Mr. Wickham asserts that Sovereign Homes failed to disclose what it knew affecting the property condition, and thereby breached the warranty. Mr. Wickham's argument, as we perceive it, is that, because he would be required to disclose repairs to the foundation of the home as a seller under Tennessee Code Annotated § 66-5-210, the repaired foundation constitutes a defect in the condition of the property under the express warranty. Mr. Wickham cites no law in support of this assertion.

Sovereign Homes, on the other hand, submits that Mr. Wickham did not rely on the provisions of Tennessee Code Annotated § 66-5-210 in the trial court, and cannot present this argument for the first time on appeal. It further asserts that it did not breach the express warranty because there were no known defects to the property when it was purchased by Mr. Wickham. Sovereign contends that it undertook repairs to address the settlement of the house caused by water pooling against the foundation pursuant to the recommendation of the structural engineers; that inspections in February and March 2008 confirmed that the installation of piers and grading had remedied the earlier settlement issues; and that it had no notice of improper soil compaction prior to March 2008. It asserts that, because there were no known existing defects to the property at the time the express warranty was made, it did not breach the warranty.

Mr. Wickham has not filed a reply brief countering Sovereign Homes assertion that he relies on the Tennessee Residential Property Condition Disclosure Form required by section 66-5-210 for the first time on appeal. Upon review of the record, we find that he did not rely on the section in his response in opposition to Sovereign Homes' motion for summary judgment. Arguments not made in the trial court cannot be raised for the first time on appeal. *Barnett v. Barnett*, No. E2008-02679-COA-R3-CV, 2010 WL 680983, at *7 (Tenn. Ct. App. Feb. 26, 2010)(citing *In Re Sentinel Trust Co.*, 206 S.W.3d 501, 528 (Tenn. Ct. App. 2005)). Accordingly, Mr. Wickham's argument that the 2007 installation of piers

to correct problems apparently caused by water pooling constitutes a defect to the condition of the property in light of the requirements of section 66-5-210 cannot be asserted for the first time here. Further, Mr. Wickham points us to no evidence in this record to demonstrate that Sovereign Homes had actual knowledge of the improper soil compaction that appears to have caused the damage to his home in 2008. Mr. Wickham does not argue that Sovereign Homes did not properly correct issues as they were identified by the structural engineers in 2007, or that the installation of piers is not an acceptable construction practice. We affirm summary judgment on this issue.

### *Holding*

In light of the foregoing, we affirm the award of summary judgment to Sovereign Homes on Mr. Wickham's claim for breach of express warranty. We reverse summary judgment to Sovereign Homes on Mr. Wickham's claims under the TCPA. The matter is remanded to the trial court for further proceedings. Costs of this appeal are taxed to the Appellee, Sovereign Homes.

_____
DAVID R. FARMER, JUDGE