IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2018 Session

## DANA LOOPER v. CITY OF ALGOOD

**Appeal from the Chancery Court for Putnam County**
**No. 2015-232          Larry B. Stanley, Jr., Judge**

_____

### No. M2016-01880-COA-R3-CV

_____

Former police officer appeals the denial of her petition for a writ of certiorari and the denial of her motion for relief from a final judgment related to the termination of her employment. Here, the evidence was undisputed that the former police officer neglected her duties, failed to follow the directive of a "superior" and was repeatedly informed about various instances of misconduct. As such, the city administrator's decision to uphold Appellant's dismissal was supported by material evidence and was neither arbitrary, illegal, nor capricious.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Kenneth S. Williams, and Cynthia A. Wilson, Cookeville, Tennessee, for the appellant, Dana Looper.

Daniel H. Rader, IV, Cookeville, Tennessee, for the appellee, City of Algood.

### OPINION

### Background

Appellant Dana Looper ("Appellant") was hired as a police officer in 2008 for Defendant/Appellee the City of Algood ("the City"). In 2015, Appellant served in the rank of Sergeant, specifically as the City Police Department's Public Information Officer. An incident occurred on October 5, 2015, in which Appellant failed to perform tasks

assigned by the City Administrator, Keith Morrison ("City Administrator"). The City Administrator immediately placed Appellant on administrative leave with pay. Following this incident, on October 12, 2015, the Chief of the Algood Police Department, Gary Harris ("Police Chief") placed a letter in Appellant's personnel file detailing several infractions allegedly committed by Appellant in 2015. The letter recommended that Appellant be terminated due to these infractions. The police chief later admitted that the infractions contained in the letter were not documented in accordance with the Personnel Rules and Regulations of the City of Algood ("Personnel Handbook"). Prior to the October 2015 letter, Appellant had no documented disciplinary incidents.

On October 14, 2015, the Police Chief provided Appellant with written notice of the termination of her employment. The letter noted that the reason for her suspension was insubordination and "failure to follow the directives of your department head." With regard to dismissal, however, the letter stated that the reasons "include, but may not be limited to, inefficiency in the performance of your duties, violating or disregarding directives given to you by your supervisor(s) and insubordination." The letter finally advised Appellant that she was entitled to review of the dismissal decision in accordance with the Personnel Handbook.

Appellant indeed chose to appeal her dismissal to the City Administrator as provided by the Personnel Handbook. An evidentiary hearing occurred on November 13, 2015. The Police Chief was the only witness. According to the Police Chief, Appellant had previously been orally reprimanded on several occasions due to failing to wear her bulletproof vest, failing to keep up with Tennessee Incident Based Reporting System (TIBRS") reports, and other misconduct as detailed in the October 12, 2015 letter placed in Appellant's file. The Police Chief explained that it was generally his practice to speak with his officers concerning infractions, hopeful that the oral reprimands alone would be sufficient to correct the behavior. The Police Chief admitted that he did not contemporaneously memorialize the oral reprimands by placing memos regarding the reprimands in Appellant's file at the time of the misconduct.

With regard to the incident on October 5, 2012, the Police Chief testified that Appellant had been directed by her Superior Officer to go with other officers to another city to pick up police cars. Upon arriving at work, the City Administrator informed Appellant that she would need to stay behind to catch up on TIBRS reports, which are required by law to be completed. *See* Tenn. Code Ann. § 38-10-102(a) ("All state, county, and municipal law enforcement and correctional agencies, and courts, shall submit to the director of the Tennessee bureau of investigation reports setting forth their activities in connection with law enforcement and criminal justice, including uniform crime reports and reports of law enforcement-related deaths."); Tenn. Code Ann. § 38-10-105 ("Any officer or official mentioned in this chapter who shall have been notified and refuses to make any report or do any act required by any provision of this chapter shall be deemed guilty of nonfeasance of office and subject to removal therefrom.").

According to the Police Chief, Appellant's position as Public Information Officer included the duty to complete the reports; Appellant, however, had become approximately eighty reports behind on the day of the incident and had previously been orally informed that she needed to catch up on the reports. The City Administrator therefore directed Appellant to complete the reports rather than travel to another city. Because of her position as the Public Information Officer, the Police Chief testified that Appellant often worked with the City Administrator and had never before expressed confusion or concern whether she was required to follow his directives. In this instance, however, Appellant responded that she would "respectfully decline" the City Administrator's directive. According to the Police Chief, Appellant's direct superior officer heard the initial exchange, but he did not intervene in the incident.

Eventually, the City Administrator issued a ruling affirming Appellant's dismissal. According to the City Administrator,

> The pattern of behavior you exhibited as a Sergeant in the Algood Police Department was not acceptable conduct for an officer in this department. Based on the fact that you were insubordinate with a supervisor on multiple occasions and neglected your duties to complete TIBRS as required by law, your termination is upheld[.]

On December 2, 2015, Appellant filed a timely and proper petition for a writ of certiorari, which was later amended by agreement of the parties. The trial court issued the writ on December 2, 2015, and the record from the prior hearing was thereafter filed with the trial court. The original trial judge that was assigned this matter entered an order of recusal on April 7, 2016, and the Honorable Judge Larry B. Stanley was designated by the Tennessee Supreme Court to hear this case. On August 5, 2016, the trial court ruled that the termination of Appellant's employment was supported by material evidence and that the decision was not arbitrary, illegal, or capricious. Appellant thereafter appealed to this Court.

While this appeal was pending, upon motion of Appellant, this Court remanded to the trial court to allow Appellant to pursue relief under Rule 60.02 of the Tennessee Rules of Civil Procedure. Appellant's Rule 60.02 motion was filed in the trial court on July 13, 2017. In support of relief under Rule 60.02, Appellant sought to admit a videotape, audiotapes, pictures, and an affidavit of a former police officer that she argued supported her assertion that the dismissal was based upon ulterior motives of the Police Chief. Appellant asserted that this evidence was unknown to her or her counsel at the time of the initial hearing in the trial court. Ultimately, the trial court denied the motion, ruling that "[n]o fraud, previously undiscoverable evidence, nor any other reason has been shown by [Appellant] that would warrant this [c]ourt granting her request." The parties were thereafter permitted to file supplemental briefs concerning the Rule 60.02 motion.

**Issues Presented**

Appellant raises two issues in this case, which are generally taken from her brief:

1. Whether the trial court erred finding and holding that the termination decision was not arbitrary, capricious or illegal, did not constitute an abuse of discretion, was based upon an actual and factual basis, and was supported by material evidence.
2. Whether the trial court abused its discretion when it denied Appellant's Rule 60.02 motion for relief from final judgment.

**Standard of Review**

A court's review of decisions made by administrative bodies is obtained by filing a petition for a common law writ of certiorari. *See* Tenn. Code Ann. § 27-8-101; *see also* ***Harding Acad. v. The Metro. Gov't of Nashville and Davidson Cty.***, 222 S.W.3d 359, 363 (Tenn. 2007) (citing ***McCallen v. City of Memphis***, 786 S.W.2d 633, 639 (Tenn. 1990)). "It is well-settled that the scope of judicial review under a common law writ of certiorari is 'quite limited.'" ***Dill v. City of Clarksville***, 511 S.W.3d 1, 9 (Tenn. Ct. App. 2015) *perm. app. denied* (Oct. 15, 2015) (quoting ***Heyne v. Metro. Nashville Bd. of Educ.***, 380 S.W.3d 715, 728 (Tenn. 2012)). As such, judicial review is limited in determining "whether the . . . board exceeded its jurisdiction; followed an unlawful procedure; acted illegally, arbitrarily, or fraudulently; or acted without material evidence to support its decision." ***Lafferty v. City of Winchester***, 46 S.W.3d 752, 759 (Tenn. Ct. App. 2000) (citations omitted).

When the sufficiency of evidence of the board's decision is challenged using a common law writ of certiorari, "the sufficiency of the evidence is a question of law" that the court must review de novo with no presumption of correctness as to the board's finding. ***Id.*** (citing ***Wilson Cty. Youth Emergency Shelter, Inc. v. Wilson Cty.***, 13 S.W.3d 338, 342 (Tenn. Ct. App. 1999)). Under the limited certiorari standard, "courts may not (1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the lower tribunal." ***State ex rel. Moore & Assocs. v. West***, 246 S.W.3d 569, 574 (Tenn. Ct. App. 2005) (internal citations omitted). The common law writ of certiorari is therefore "not a vehicle which allows the courts to consider the intrinsic correctness of the conclusions of the administrative decision maker." ***Id.*** (citing ***Powell v. Parole Eligibility Rev. Bd.***, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1997); ***Yokley v. State***, 632 S.W.2d 123, 126 (Tenn. Ct. App. 1987)).

This standard "envisions that the court will review the record independently to determine whether it contains 'such relevant evidence that a reasonable mind might

accept as adequate to support a rational conclusion." *Lafferty*, 46 S.W.3d at 759 (quoting *Hedgepath v. Norton*, 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992)). Said another way, "'the reviewing court is limited to asking whether there was in the record before the fact-finding body *any* evidence of a material or substantial nature from which that body *could* have, *by reasoning from that evidence*, arrived at the conclusion of fact which is being reviewed.'" *Massey v. Shelby Cty. Retirement Bd.*, 813 S.W.2d 462, 465 (Tenn. Ct. App. 1991) (quoting Ben Cantrell, *Review of Administrative Decisions by Writ of Certiorari in Tennessee,* 4 Mem. St. U. L. Rev. 19, 29–30 (1973) (emphasis in original)). If there is such evidence present in the record, the court must affirm the administrative body's decision. *Id.*

**Discussion**

**I.**

Appellant first asserts that the trial court erred in finding that the termination decision was supported by material evidence and not arbitrary, capricious, or illegal. Pursuant to the Algood Police Department Police Manual ("Police Manual"),

> An employee may be dismissed by the Chief, however, employees of the City of Algood are considered "at will" employees and may suffer the penalty of dismissal, demotion, and any other disciplinary action as a result of a direct and negligent violation of any rule, regulation, policy procedure, general order or direct, lawful order given to them by a supervisor.

In support of her argument that the dismissal was unlawful in this case, Appellant generally has two contentions: (1) that Appellant could not commit "insubordination" as that term is defined by the Employee Handbook where the City Administrator was not her direct supervisor; and (2) that prior alleged disciplinary actions that were not contemporaneously recorded in Appellant's personnel file were not proper considerations in the termination decision. Both of these arguments rely on written documents, namely, the Personnel Handbook and Police Manual.

As an initial matter, we discuss the court's role in interpreting these documents. Here, Appellant appears to assert that this Court is bound by the testimony of the Police Chief regarding the interpretation and construction of these documents. From our review of the record, however, the Police Chief's testimony on this issue was largely equivocal, at times agreeing with Appellant's interpretation of the documents, but at other times disagreeing.[1] Regardless, "[i]nterpretation of written documents is generally a matter of

---

[1] For example, when asked about the situation where a person outside the chain of command countermands the directive of an officer in the chain of command, the Police Chief responded:

> Well, like I said, I do see your point, I mean, maybe in Metro Nashville. Of

law for the court that is reviewed de novo with no presumption of correctness." ***Adkins v. Bluegrass Estates, Inc.***, 360 S.W.3d 404, 411 (Tenn. Ct. App. 2011) (citing ***Allstate v. Watson***, 195 S.W.3d 609, 611 (Tenn. 2006) (holding that the interpretation of written document only becomes an issue of fact if it is ambiguous and parole evidence is necessary to determine its meaning);[2] *c.f.* ***Rose v. Tipton Cty. Pub. Works Dep't***, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997), *holding modified by* ***Reed v. Alamo Rent-A-Car, Inc.***, 4 S.W.3d 677 (Tenn. Ct. App. 1999) (outlining rules for determining whether a Personnel Handbook constitutes a binding implied contract).[3] As such, we are generally not bound by the understanding of the Police Chief regarding the interpretation of these documents.[4]

We next consider Appellant's contention that she did not commit "insubordination" as that term is defined in the Personnel Handbook. As previously discussed, the insubordination at issue in this case involves Appellant's refusal to comply with a directive by the City Administrator to stay behind on a trip and complete delinquent TIBRS reports. When directed to do so by the City Administrator, however, Appellant declined to comply with the command. This incident was the catalyst for the disciplinary action against Appellant.

The Personnel Handbook contains specific guidelines for disciplinary action against employees. According to the Personnel Handbook,

---

course, we are a smaller department, so you know, the City Manager is the head of the City. And when he does say to do something, I deal with it. And you know, I expect my officers to, too, you know. And the policy says this is the chain of command, and you know, but the policy also says -- I have it here. "The administrative head of the City stipulated in the Municipal Charter, City Manager, City Administrator, or Mayor." You know, I mean, he is the head of the City. You know, [Appellant] works for him. She understands, you know, how this works. I mean, this is not something that's foreign to her. She actually deals with him on the City Facebook page and public information for the City. It's not something that's uncommon. She did things for him on a regular basis. She actually went to him and discussed things with him that sometimes I felt like she shouldn't. But you know, him being the head of the City, you know, it's not something that I'm going to intervene in.

With regard to whether non-documented oral reprimands could be considered for purposes of determining the appropriate discipline, the Police Chief first replied: "Right. I understand your, I mean, what you are saying. But all of these did have bearing on because, you know, they happened." As such, Appellant's counsel insisted that Appellant could not "give her side of the story." Of course, Appellant had the opportunity to testify at the administrative hearing but did not.

[2] Appellant does not argue in this appeal that the documents are ambiguous to the extent required to admit parole evidence.

[3] This case did not involve an argument that the Personnel Handbook creates an implied contract. It is undisputed that the Personnel Handbook provides that Appellant is an at will employee and that the discipline procedures "do[] not change the 'at will' status of employees of the department."

[4] Appellant did not testify as to her understanding or lack thereof of the documents.

Whenever an employee's performance, attitude, work habits, or personal conduct fall below a desirable level, supervisors shall inform employees promptly and specifically of such lapses and shall give them counsel and assistance. If appropriate and justified, a reasonable period of time for improvement may be allowed before initiating disciplinary action []. In some instances, a specific incident in and of itself may justify severe initial disciplinary action; however, the action to be taken depends on the seriousness of the incident and patterns of past performance and conduct. Reasons for disciplinary action may include, BUT SHALL NOT BE LIMITED TO: misconduct, negligence, incompetence, insubordination, unauthorized absences, falsifying records, or violating any of the charter provisions, ordinances, or these rules. Examples include:

* * *

3. violating any lawful and reasonable regulation, order, or direction made or given by a superior, or insubordination that constitutes a serious breach of discipline; . . . .

The Personnel Handbook does not specifically define either the terms "insubordination" or "superior." As such, Appellant asserts that we must look to the Police Manual for the definitions of these terms. The Police Manual defines "insubordination" as "[t]he refusal to obey or comply with a lawful order an employee of higher rank or position." The term "order" is defined as "[a] written or verbal instruction by a superior officer." The term "superior officer" is defined as an officer with higher rank. Finally, the term "employee" is defined as "[a]ll sworn police officers, reserve officers, and civilian employees of the department; synonymous with "Officer."

There is generally no dispute that the City Administrator was not expressly included in Appellant's "chain of command," was not her "superior officer," and arguably could not give Appellant an "order" as that term is defined by the Police Manual. Appellant therefore asserts that she did not commit "insubordination" as that term is defined because she did not refuse to comply with an "order" from an "employee" of higher rank, or a "superior officer." Although we agree with Appellant that the relevant documents in this case are not a model of clarity, we cannot conclude that the fact-finder acted without material evidence or arbitrarily, illegally, or capriciously in considering Appellant's failure to comply with the City Administrator's directive as a ground for disciplinary action.

As an initial matter, we note that the Personnel Handbook makes clear that employees may be disciplined for not only the enumerated violations, but other conduct that is not specifically enumerated. Thus, Appellant's argument that her failure to obey the City Administrator's directive does not fall squarely within the definition of

insubordination contained in the Personnel Handbook and Police Manual is generally unavailing.

Even applying the narrow definition of "insubordination" contained in the documents at issue, however, we must conclude that there was material evidence in the record to show that Appellant in fact committed insubordination. In addition to the above guidelines regarding disciplinary actions, the Police Manual contains other guidance as to when "insubordination" takes place. According to the Police Manual, "[d]eliberate refusal by any Officer to obey a lawful order given by a **superior** shall constitute insubordination." (Emphasis added). The Police Manual indicates that "[d]isciplinary action and/or dismissal will be taken" if such insubordination occurs. Likewise, the Police Manual provides that no officer shall "[a]ct insubordinate or disrespectful toward a **superior**." (Emphasis added).

Despite Appellant's argument otherwise, neither the Police Manual nor the Personnel Handbook expressly limit "insubordination" to only those in the Police Department "chain of command," which does not expressly include the City Administrator. Instead, both the Police Manual and the Personnel Handbook speak in terms of disobeying a "superior" rather than the more specific "superior officer." Likewise, while an "order" is specifically defined as originating from a "superior officer," the term "direction" used in the Personnel Manual is not expressly limited to only those directives coming from a superior officer. Although the term "superior officer" is defined by the Police Manual, the term "superior" is not. The Police Manual, however, does contain an organizational chart that applies to police officers. The chart outlines the superiority of various positions as follows:

Mayor and Board of Alderman Council
City Administrator
Chief of Police
Lieutenant of Patrol and Lieutenant of Investigations
Senior Patrol Sergeant
Sergeant
Detective
Senior Patrolman
Patrolman

Thus, the Police Manual makes clear that the City Administrator is considered the superior of both the Chief of Police and Sergeants, such as Appellant.[5]

---

[5] Likewise, the Personnel Handbook contains specific rules regarding discipline, which require approval of the City Administrator. For example, an employee can only be suspended with the approval of the City Administrator. These rules illustrate that the City Administrator has authority over all city employees.

In addition, the City's ordinances specifically provide that the City Administrator has the duty to "supervise and coordinate all administrative activities of each department under the city council." Algood Code of Ordinances, Title 1, ch.4 § 1-401. This authority extends to the authority to "act as personnel officer in matters of employment, dismissal, promotion, or demotion of any employee." *Id.* Based on this ordinance, the Tennessee Attorney General has opined that "[a]ssuming the police chief is the head of a city department, this ordinance grants the city administrator some supervisory authority over the police chief," allowing the city administrator to in some ways "overlook[] and "superintend[] the work of the police chief." Tenn. Att. Gen. Op. No. 13-63 (August 9, 2013). In refusing to follow the City Administrator's directive, it does appear that Appellant "violat[ed] a[] . . . direction made or given by a superior" sufficient to justify disciplinary action under both the Personnel Handbook and the Police Manual.

The particular facts of this case only buttress our conclusion. Here, the Police Chief specifically testified that Appellant knew of her duty to follow the City Administrator's directives, as Appellant had worked with the City Administrator in her capacity as the police social media officer. According to the Police Chief, Appellant had never before raised an issue regarding whether she was required to follow the City Administrator's lawful commands. Appellant chose not to testify at the administrative hearing to rebut the Police Chief's testimony on this issue. In refusing to follow the City Administrator's command, Appellant was clearly refusing a directive by a superior, as evidenced by both the Police Manual and the undisputed testimony in this case. Appellant's refusal to comply with the command therefore constitutes insubordination. Appellant therefore clearly violated the Police Manual rule providing that no officer shall "[a]ct insubordinate or disrespectful toward a superior." Thus, Appellant was properly subject to "the penalty of dismissal, demotion, and any other disciplinary action as a result of a violation of [the Police Manual's] rule, regulation, [or] policy procedure[.]"

Finally, as previously discussed, the Police Chief was at liberty to take disciplinary action in other instances of misconduct that did not fall squarely within the definition of insubordination. As noted above, the Personnel Handbook provides that disciplinary actions may be taken when an employee commits not only insubordination, but also "misconduct" or other types of violations. The term "misconduct" is not defined by either the Personnel Handbook or the Police Manual. *Black's Law Dictionary* generally defines "misconduct" as "[a] dereliction of duty; unlawful or improper behavior." *Black's Law Dictionary* 1089 (9th ed. 2009). We concede that the term "misconduct" is not specifically mentioned as a basis for the termination. The notice provided to Appellant, however, stated that the termination of Appellant's employment related to "inefficiency in the performance of your duties, violating or disregarding directives given to you by your supervisor(s) and insubordination." Likewise, the City Administrator stated in his letter following the appeal that disciplinary action was warranted based upon a pattern of behavior, including "neglect[ing] your duties to complete TIBRS as required by law."

- 9 -

Clearly, these allegations encompass a dereliction of duty that could be characterized as misconduct.

Moreover, this Court has previously explained in reviewing a decision under the common law writ of certiorari standard, "a reviewing court is not to determine the validity of the precise grounds upon which an administrative body based its decision but only whether there is material evidence to support the decision." *Guess v. City Of Manchester*, No. M2010-00250-COA-R3-CV, 2010 WL 4629594, at *5 (Tenn. Ct. App. Nov. 15, 2010). A thorough review of the record indicates that Appellant had engaged in a dereliction of her duties with regard to the TIBRS reports sufficient to warrant disciplinary action. According to the Police Chief's testimony, Appellant was well-aware of her duty to complete the reports, which duty was integral to the performance of her job. Despite this fact, Appellant was approximately eighty reports behind on the day the City Administrator directed her to complete them. As previously discussed, despite working with the City Administrator, Appellant raised no prior issue with regard to accepting his directives. Moreover, Appellant had been previously informed by the Police Chief, who was undisputedly her superior officer in the chain of command, to complete the reports. Again, Appellant chose not to testify at this hearing to rebut any of this evidence; as such, we take it as undisputed. On the whole, Appellant's refusal to timely complete the reports, which were a known and integral component of her job, culminating in the incident with the City Administrator, constitutes misconduct of the type that warranted disciplinary action under the Personnel Handbook.

We next consider Appellant's contention that her prior infractions could not be used in the termination decision pursuant to the Personnel Handbook. As we perceive it, this argument concerns the Police Chief's decision to impose the harshest penalty allowed under the Personnel Handbook. Appellant asserts, however, that such a penalty was not warranted where the hierarchy of disciplinary action applicable in this case was not fulfilled. In the absence of strict compliance with this hierarchy, Appellant asserts that we must consider the disciplinary action in this case as a "first offense," for which dismissal was not warranted.[6] Again, we look to the Personnel Handbook to decide this issue.

Here, the Personnel Handbook provides four types of disciplinary action that may be taken: (1) oral reprimand; (2) written reprimand; (3) suspension; and (4) dismissal. Generally, only the rules regarding oral reprimand and dismissal are at issue in this case. With regard to an oral reprimand, the Personnel Handbook states:

> Whenever an employee's performance, attitude, work habits, or personal conduct fall below a desirable level, the supervisor [] shall inform the employee promptly and specifically of such lapses and shall give him/her counsel and assistance. If appropriate and justified, a reasonable period of

---

[6] In support, Appellant points to other employees who allegedly committed multiple infractions prior to being dismissed.

time for improvement may be allowed before initiating disciplinary actions. The supervisor will place a memo in the employee's file stating the date of the oral reprimand [], what was said to the employee, and the employee's response.

The Personnel Handbook describes dismissal as follows: "When other forms of discipline have not resulted in the desired behavior, or when more severe initial action is warranted, the City Administrator [] or department head [] if so delegated by the City Administrator, may dismiss [] an employee."

Here, there is no dispute that no memos were placed in Appellant's file prior to October 2015 detailing any oral reprimands received by Appellant in her tenure as a police office. As such, Appellant argues that none of her prior alleged reprimands can be considered in the decision to dismiss Appellant, stating: "If the matters listed in the [Police] Chief's Memorandum are not taken into consideration, and the Police Chief acknowledged that these matters should not be considered, then the record is devoid of proof of any pattern of misbehavior, much less of multiple insubordinate incidents." As previously discussed, however, the Police Chief's interpretation of the written documents is not binding on this Court.[7] *See Adkins*, 360 S.W.3d at 411. Rather, we review the documents de novo to determine their meaning. *Id.*

Nothing in the Personnel Handbook or the other relevant documents contained in the record indicate that prior oral reprimands cannot be considered in determining the discipline of an employee where there was no contemporaneous memorandum of the reprimand at the time it occurred. In the first instance, nothing in the guidance on oral reprimands indicates that a written memorandum must be placed in the employee's file contemporaneously with the oral reprimand. Indeed, while the Personnel Handbook clearly states that the oral reprimand should be given "promptly" following the conduct at issue, the rule does not state that the memorandum must also be placed promptly in the employee's file. Here, the Police Chief did place a memorandum in Appellant's file in October 2015 detailing the prior oral reprimands that had been given to Appellant concerning her conduct. The memorandum does not contain exact dates for the reprimands but generally details the conduct issues that were brought to Appellant's attention beginning in early 2015, as well as her responses. For example, the memorandum details a conversation with Appellant in May 2015 concerning Appellant wearing her bulletproof vest, which included multiple discussions regarding Appellant's lack of compliance with the rule.[8] The memorandum further noted conduct issues

---

[7] Again, the Police Chief was somewhat equivocal in his testimony on this issue.

[8] There was some discussion at trial that Appellant's vest was ill fitting because unlike with male police officers, Appellant was not fitted for the vest. The Police Chief testified, however, that while Appellant was initially provided a fitted vest like all male officers, the vest was not specifically tailored to a female. As such, Appellant was later allowed to order another vest. The testimony was unclear as to whether this vest was fitted to Appellant via her own measurements or not fitted specifically to her. The

regarding Appellant advising another officer to do less work because she is female, repeatedly parking in an inappropriate parking space, and using city funds to purchase a hotel room after the expenditure had been specifically denied.

The Police Chief's action in placing the October 2015 memorandum in Appellant's file after she was placed on leave for her most recent infraction does not appear to have been entirely consistent with spirit of the oral reprimand rule above; Appellant, however, has not pointed to any provision of the Personnel Handbook or Police Manual that states that infractions that result in oral reprimands that are not memorialized by written memorandum, contemporaneous or otherwise, may not be considered in determining the appropriate discipline of an employee. Indeed, in discussing the appropriate disciplinary action to be taken in a particular situation, the Personnel Handbook provides that "the action to be taken depends on the seriousness of the incident and patterns of past performance and conduct." Nothing in this provision limits the consideration of "past performance and conduct" to only those incidents that were properly memorialized by contemporaneous written memorandum.

Likewise, Appellant has pointed to no law that states that this Court must ignore the undisputed testimony of the Police Chief that these infractions did occur and were brought to Appellant's attention during her tenure as a police officer. Again, this Court is not free to reweigh the evidence, but must affirm the fact-finder if the record contains any material evidence to support the decision. *See **Houston v. Memphis & Shelby Cty. Bd. of Adjustment***, 488 S.W.2d 387, 388 (Tenn. Ct. App. 1972) ("[I]f upon an examination of the evidence before the board or commission, the court finds any material evidence to sustain the finding there made, the court must affirm the board or commission."). Here, material evidence in the record exists to show that Appellant indeed engaged in a pattern of behavior that included refusal to follow the directives of her superior, the City Administrator, insubordination involving those in the chain of command, and dereliction of her duties to complete TIBRS reports. Appellant's argument that her dismissal resulted from a first offense is therefore unpersuasive. Considering the totality of the evidence, we must conclude that Appellant's failure to follow the directive of the City Administrator to complete reports which were a known and integral part of her job, coupled with other instances in which Appellant repeatedly failed to modify her behavior following discussions with those in the chain of command, are material evidence to support the harsh disciplinary action of dismissal in this case.

## II.

---

Police Chief specifically testified that counsel would "have to ask [Appellant]" about the fitting; as previously discussed, Appellant did not testify. Regardless, the Police Chief testified that comfort was generally not a factor with regard to bulletproof vests, as they "are not made to be comfortable."

We next consider whether the trial court erred in denying Appellant's motion under Rule 60.02 of the Tennessee Rules of Civil Procedure. Pursuant to Rule 60.02,

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. . . .

According to the Tennessee Supreme Court:

> The general purpose of Rule 60.02 is "'to alleviate the effect of an oppressive or onerous final judgment.'" *Black v. Black*, 166 S.W.3d 699, 703 (Tenn. 2005) (quoting *Killion v. Dep't of Human Servs.*, 845 S.W.2d 212, 213 (Tenn. 1992)). Rule 60.02 is equally aimed at striking a "proper balance between the competing principles of finality and justice." *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Thus, relief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome. *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991). Instead, relief is appropriate only in those relatively few instances that meet the criteria of the rule. *Id.*
>
> Rule 60.02 has been described as an "escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules." *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn.1990). Out of respect for the finality afforded to legal proceedings, this " 'escape valve' should not be easily opened." *Toney*, 810 S.W.2d at 146. Accordingly, a party seeking relief from a judgment under Rule 60.02 bears the burden of proving that it is entitled to relief by clear and convincing evidence. *McCracken*, 958 S.W.2d at 795. Evidence is clear and convincing when it leaves "'no serious or substantial doubt about the correctness of the conclusions drawn.'" *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n. 3 (Tenn. 1992)). "In other words, the evidence must be such that the truth of the facts asserted be 'highly probable.'" *Goff*, 297 S.W.3d at 187 (quoting *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 341 (Tenn. 2005)).

***Henderson v. SAIA, Inc.***, 318 S.W.3d 328, 336 (Tenn. 2010).

To obtain relief under Rule 60.02, the moving party "must describe the basis of relief with specificity[.]" ***Hussey v. Woods***, 538 S.W.3d 476, 483 (Tenn. 2017) (quoting ***Minor Miracle Prods., LLC v. Starkey***, No. M2011-00072-COA-R3-CV, 2012 WL 112593, at *7 (Tenn. Ct. App. Jan. 12, 2012). Here, Appellant's Rule 60.02 motion sought relief under subsection (2) fraud, as well as subsection (5) the catchall provision. In her brief, however, Appellant appears to confine her argument to the issue of fraud. As such, we will only consider this ground for relief in this appeal.

"[A] motion to set aside a judgment for fraud under section 2 of Rule 60.02 may be based on intrinsic or extrinsic fraud[.]"***Black***, 166 S.W.3d at 703 (citing ***Whitaker v. Whirlpool Corp.***, 32 S.W.3d 222, 230 (Tenn. Ct. App. 2000)).

> Intrinsic fraud occurs "within the subject matter of the litigation," and it includes such things as falsified evidence, forged documents, or perjured testimony. ***Whitaker***, 32 S.W.3d at 230. Extrinsic fraud, on the other hand, "involves deception as to matters not at issue in the case which prevented the defrauded party from receiving a fair hearing." ***Nobes v. Earhart***, 769 S.W.2d 868, 874 (Tenn.Ct.App.1988). Examples of extrinsic fraud have included keeping a party from filing a lawsuit by falsely promising a compromise, keeping a party from knowing about a lawsuit, and an attorney's claiming to represent a party while acting in a manner opposed to the party. *See **id.***

***Black***, 166 S.W.3d at 703. In order to prevail on a claim for fraud, the following elements must be shown:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

***Hodge v. Craig***, 382 S.W.3d 325, 343 (Tenn. 2012) (citing ***Walker v. Sunrise Pontiac-GMC Truck, Inc.***, 249 S.W.3d 301, 311 (Tenn. 2008)); *see also **Concrete Spaces, Inc. v. Sender***, 2 S.W.3d 901, 904 n.1 (Tenn.1999) (stating that the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous). Thus,

"in order for a fraudulent misrepresentation to be actionable, it must consist of a statement of an existing or past material fact, made with knowledge of its falsity or with reckless disregard of the truth." ***Fowler v. Happy Goodman Family***, 575 S.W.2d 496 (Tenn. 1978).

In her supplemental appellate brief, Appellant asserts that fraud occurred because the Police Chief submitted perjured testimony concerning the basis for the termination of Appellant's employment. Specifically, Appellant points to videotape evidence in which the City Administrator admitted that police officers report to the Police Chief, rather than the City Administrator, which the Police Chief does not contradict. Likewise, Appellant contends that evidence of the Police Chief's "misogynistic statements about women in law enforcement generally" and Appellant specifically support Appellant's claim that the reasons for her dismissal were fabricated.

We begin with the evidence surrounding the duty of police officers to follow the directives of the City Administrator. From the video, following an apparent dispute between two individuals, it appears that the City Administrator states that one individual, presumably a police officer, "answers" to the Police Chief, while another individual, presumably a non-police City employee, "answers" to the City Administrator. Similarly, Appellant presented an affidavit from another employee who had been dismissed from the police department that "the chain of command for police officers receiving orders was through the Algood Police Chief and not the City Manager." Even assuming that the other elements are met, it is unclear how the justifiable reliance element is met in this case. Here, it appears that Appellant asserts that the Police Chief's testimony that she was required to follow the commands of the City Administrator were false. Appellant has not shown, however, any reliance on this statement, as her counsel at the underlying hearing clearly argued this very argument at the initiation of these proceedings more than two years ago. As such, it does not appear that Appellant can show clear and convincing evidence to support every element of fraud.

Moreover, despite her argument to the contrary, we have held that both the Police Manual and the City of Algood Ordinance provide support for the conclusion that the City Administrator had authority to give commands to police officers. The Police Chief also testified without dispute that because of Appellant's unique position as the police social media officer, she was regularly in contact with the City Administrator and had never expressed any concern about following those directions; it does not appear that the officer who filed an affidavit in support of Appellant's Rule 60.02 motion was in a similar position. Finally, had the Police Chief's testimony about Appellant's contact with the City Administrator been false, Appellant was free to testify to that effect; Appellant chose, however, not to deny the Police Chief's statements concerning this issue. Finally, we note that it is difficult to discern the context of the statements made by the City Administrator in the recording. Regardless, we have held that Appellant's misconduct need not fall within the narrow definition of "insubordination" in order to justify

disciplinary action. In the totality of the circumstances, this evidence is insufficient to justify Rule 60.02 relief.

Turning to the remaining allegations of fraud and perjury against the Police Chief, there is no dispute that the Police Chief did engage in misconduct that resulted in his own dismissal. We agree with the City, however, that the Police Chief's own misconduct does not negate the facts of Appellant's own misconduct. Here, the Police Chief testified at length about Appellant's past instances of misconduct leading to the October 2015 incident. Importantly, none of the evidence presented in support of Appellant's Rule 60.02 motion specifically concerns the Police Chief's testimony regarding Appellant's prior instances of misconduct. As we have repeatedly emphasized throughout this case, Appellant chose not to present any affirmative evidence at the hearing on her termination to deny or rebut the allegations concerning her own conduct.[9] In the absence of any evidence to rebut the Police Chief's testimony regarding her misconduct, we must credit it on appeal. Consequently, Appellant has failed to present clear and convincing evidence that the Police Chief's testimony regarding Appellant's misconduct was perjured. *See McCracken*, 958 S.W.2d at 795.

Finally, in resolving the issue of whether Appellant has shown her entitlement to Rule 60.02 relief, we must remain cognizant of the narrow standard of review applicable in writ of certiorari actions. *See Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994) (describing our review as "very narrow"). Here, regardless of Appellant's claims of fraud and misconduct by the Police Chief that Appellant contends show an ulterior motive for her dismissal, the undisputed evidence shows that Appellant engaged in a pattern of misconduct related to her duties. This undisputed pattern of misconduct constitutes material evidence from which the City Administrator could choose to uphold Appellant's dismissal.[10] As such, the decision was not arbitrary, capricious, or illegal. Accordingly, Appellant failed to meet her burden to show that she was entitled to relief from the final judgment in this case due to allegations of fraud.

## Conclusion

The judgment of the Chancery Court of Putnam County is affirmed and this cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs of this appeal are taxed to Appellant, Dana Looper, and her surety.

---

[9] Specifically, Appellant failed to even testify that the misconduct did not take place, much less offer support for that assertion.

[10] In this case, we review the City Administrator's decision to uphold the dismissal, rather than the initial decision by the Police Chief to terminate Appellant's employment. *See generally Massey*, 813 S.W.2d at 465 (noting that this Court reviews the decision of the "the fact-finding body"). Appellant has not presented proof that the City Administrator engaged in any misconduct or misogyny of the type alleged against the Police Chief.

_____

J. STEVEN STAFFORD, JUDGE